NOT DESIGNATED FOR PUBLICATION

No. 129,221

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AHMIR KENYATTA and MEGAN FLORENCE,
*Appellants*,

v.

BRITTANY SOPHA, a/k/a JOHNSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOHN B. MCENTEE, magistrate judge. Oral argument held May 12, 2026. Opinion filed August 7, 2026. Reversed and remanded with directions.

*Michael E. Whitsitt*, of Whitsitt & Whitsitt, LLC, of Westwood Hills, for appellants.

*Andrew L. McGrew*, *Julie A. Anderson*, *Michael J. Wambolt*, *Ara B. Brown*, *Rebecca Auriemma*, and *Sean T. Carver*, of Anderson & Associates, of Westwood, for appellee.

Before MALONE, P.J., ATCHESON, J., and MICHAEL B. BUSER, retired Court of Appeals Judge, assigned.

PER CURIAM: This case arises from a lawsuit filed by Ahmir Kenyatta and Megan Florence to recover a wrongfully withheld security deposit and counterclaims filed by Brittany Sopha a/k/a Johnson for breach of contract due to Kenyatta and Florence's early termination of a rental lease. Following a bench trial and the district court's entry of judgment in favor of Sopha, Kenyatta and Florence appeal the court's adverse ruling on the breach of contract counterclaim. Upon review, we reverse the district court's

1

judgment that Kenyatta and Florence violated the lease by failing to pay a lease break fee which the court held was a valid and enforceable liquidated damages clause.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2023, Kenyatta and Florence entered into a residential lease with Sopha. The term of the lease was for one year, beginning on December 11, 2023, and ending on December 10, 2024. The lease agreement included the following relevant terms: (1) Rent was $2,335 per month, including $35 per month in "pet rent"; (2) Kenyatta and Florence agreed to pay a $1,500 security deposit, $500 "pet fee," and $400 "HOA fee"; and (3) Kenyatta and Florence agreed to a "[l]ease break fee" of one month's rent. The lease also included the following provision:

"EARLY TERMINATION OF TENANCY ADDENDUM

"This LEASE ADDENDUM is incorporated into and made part of the lease executed on December 7, 2023 by and between Brittany Sopha (Landlord) and Megan Florence, Ahmir Kenyatta (Tenant[s]) for the Leased Premises located at 17560 W. 159th CT, Olathe, KS 66062.

"If Tenant(s) choose to move out before the end of the lease term, or renewal thereof, Tenant(s) understand that the Landlord will incur costs, which include, but are not limited to, the time and expense in finding and renting to a new Tenant. These costs may include employee costs, advertising, marketing, and other expenses. Naturally, the exact amounts of these costs vary and are difficult to determine.

"Tenant(s) agree that Tenant prefers to have a fixed, known amount that the Tenant agrees to pay if the Tenant moves out early, rather than taking a chance that the actual costs could be more or less than this agreed-to amount. Therefore, *Tenant(s) agrees to pay to the Landlord an early move-out charge in the amount of $3,000* to cover the Landlord's expenses in having to re-rent the Leased Premises in place of paying the Landlord's actual damages. To implement this option, Tenant must submit an advance written notice to the Landlord of at least 60 days before termination.

2

"Tenant(s) have also evaluated and understand that this charge is a very reasonable estimate of the Landlord's re-renting costs. Tenant(s) also agree to pay this charge whether or not the Landlord is successful in re-renting the Leased Premises. Additionally, the Tenant(s) understand that this charge is not a penalty or fee that relieves the Tenant(s) of Tenant obligations under the Lease. *Tenant(s) is/are still responsible for all obligations under the Lease, including paying for all rent due, damages, and other charges.*" (Emphases added.)

About five months after signing the lease, on May 26, 2024, Kenyatta and Florence notified Sopha that they intended to terminate the lease early and vacate the property on June 18, 2024. Upon moving out, Florence completed a final walkthrough with Sopha, and the landlord found no damage to the property.

The parties exchanged several emails regarding the lease termination and any fees owed by Kenyatta and Florence. Sopha requested that Kenyatta and Florence pay the $3,000 early move-out fee plus "prorated rent to cover the full 60-day [notice] period" through July 26, 2024. In response, Kenyatta and Florence wrote, "it is in our and your interest to get the house rented" and "[i]f you did not have a tenant until, say, 7/5, then sure, you could bill me for five days of July, but when the lease would take effect, that new tenant would be in a lease agreement with you, so that would cap any sort of 'damages.'" Kenyatta and Florence expressed the belief that their "liability would run through the date a new lease started" and thus they would make Sopha "whole based on any gap in that time." Kenyatta and Florence proposed paying the early move-out charge, suggesting that, assuming no damage was found in their final walkthrough, Sopha could apply the $1,500 security deposit to the $3,000 early move-out charge and require Kenyatta and Florence to pay the remaining $1,500 balance.

Sopha responded that Kenyatta and Florence should pay the monthly July rent in advance and if any new tenants rented the property before the end of July, then Sopha "would reimburse [Kenyatta and Florence] upon successful new tenant move-in." After

3

consulting her attorney, however, Sopha sent another email changing course and stating that "if we secure a tenant before [July 26] I *will consider review* of the actual prorated days." (Emphasis added.) Sopha also wrote that, based on a conversation with her attorney, "[i]n the event of early termination and/or breach, the lease (and state/local laws) allow the landlord (me) *to accelerate all rent payments for the remainder of the lease (10Dec24)*." (Emphasis added.) Sopha concluded: "That said, I do like the more reasonable approach of $4,958.39 due now (or in billings per the above)."

Sopha ultimately rented the property to new tenants for $2,500 per month beginning June 21, 2024—only three days after Kenyatta and Florence vacated the property. Kenyatta and Florence did not pay either the $2,335 lease break fee or the $3,000 early move-out charge provided for in the lease.

In August 2024, Kenyatta and Florence filed a petition in Johnson County District Court against Sopha claiming that the mandatory $500 nonrefundable pet deposit in the lease was illegal under the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2540 et seq. (KRLTA), and requesting a return of the full deposit plus $750 in statutory damages under K.S.A. 58-2550(c).

In September 2024, Sopha filed an answer, contending the lease did not call for a "'pet deposit' but rather a one-time pet fee," and asserting various affirmative defenses. Sopha also made a counterclaim for breach of contract, claiming Kenyatta and Florence owed her the $3,000 early move-out charge, and $265 for property damage caused by their negligence. In total, Sopha requested $3,265 in damages on her counterclaims.

Kenyatta and Florence filed an answer to Sopha's counterclaims, denying any breach of the lease for vacating early or refusing to pay an early termination fee. Kenyatta and Florence also asserted that Sopha suffered no damages from their early termination, because she "immediately rented the premises to another tenant."

4

A bench trial was held in Johnson County District Court on March 10, 2025. At trial, the court considered Kenyatta and Florence's claim for a refund of the pet deposit and statutory damages, and Sopha's counterclaims for breach of contract and damages.

Kenyatta testified that he and Florence are married, and he is a law student. Kenyatta agreed that he read the rental lease but based on some legal research he concluded that both of the lease's two provisions—the $2,335 lease break fee and the $3,000 move-out charge—were unenforceable. Still, Kenyatta signed the lease as is because he felt he had no bargaining power as the prospective tenant. Florence testified that she agreed to the early termination fees because, "We needed a place to live."

Sopha testified that she spent 40 hours between May 26, 2024 (when Kenyatta and Florence notified her that they would be ending the lease early) and June 21, 2024 (when the new tenants moved in)—listing the house on Zillow and corresponding with interested parties. While Sopha agreed that she would have spent time taking those measures when the lease eventually ended in December 2024, she noted that in the later instance she would not have had to take time off from her full-time job. According to Sopha, Kenyatta and Florence paid their rent for June, and the new tenants moved in before the end of the month—on June 21, 2024.

Sopha testified that she added the early termination addendum to the lease after her last tenant terminated their lease early and Sopha had experienced financial stress looking to fill the tenancy. As a result, Sopha believed she needed an early move-out charge to ensure that expenses were covered in similar situations. In Sopha's experience of leasing the rental property over the past 10 years, it took her four to six weeks on average to find new tenants and finalize a lease.

In closing arguments, Kenyatta and Florence's attorney stated that the early termination fees were prohibited under the KRLTA as an unconscionable penalty because

5

Sopha, as the landlord, sustained no damages. Sopha's attorney argued that the $3,000 early move-out charge was a reasonable liquidated damages clause allowed under Kansas law.

The district court entered its judgment while making findings of fact and conclusions of law. First, the court held the $500 pet fee was a security deposit rather than a one-time non-refundable fee. Accordingly, Sopha was ordered to return the pet deposit to Kenyatta and Florence, along with statutory damages of one-and-a-half times the withheld amount. Second, the district court held that Sopha did not prove Kenyatta and Florence acted negligently to cause any property damage and thus she was not entitled to her requested $265 in damages.

Third, regarding Sopha's counterclaim for early termination fees due to Kenyatta and Florence breaching the lease before its expiration, the district court found the lease allowed Sopha "to recover both early termination and/or lease-break fees, which are both deemed by the Court to be liquidated damages that are permitted under Kansas law." Finding the two liquidated damages clauses were in conflict, however, the court held the provisions must be construed against Sopha. Accordingly, the district court ruled, "that Paragraph 4(B) of the Lease controls. Paragraph 4(B) requires [Kenyatta and Florence] to pay to [Sopha] an early termination fee equal to one month of rent. This amount, $2,335, is reasonable—was agreed to, and is not unconscionable and is the liquidated damages clause agreed to under the terms of the Lease." Because Kenyatta and Florence failed to pay Sopha the lease break fee, the district court held Kenyatta and Florence violated the lease.

Based on these findings, the district court ordered judgment in favor of Kenyatta and Florence and against Sopha for $500 for the pet security deposit plus $750 in statutory damages, for a total of $1,250. The court also ordered judgment in favor of Sopha and against Kenyatta and Florence for $2,335 as liquidated damages for violating

6

the lease break fee. The court then offset the awards, leaving the final judgment in favor of Sopha and against Kenyatta and Florence for the remainder of $1,085.

Kenyatta and Florence timely appealed and filed a supersedeas bond in the amount of the judgment pending the outcome of their appeal. Sopha did not cross-appeal the district court's judgment against her.

ANALYSIS

Kenyatta and Florence contend the district court's judgment was unlawful because it approved a contractual penalty of a lease break fee—one month's rent of $2,335—that did not constitute "recoverable damages" under the KRLTA. This issue is preserved because in the district court Kenyatta and Florence claimed the early termination fees were an unenforceable penalty rather than valid liquidated damages provisions. In response, Sopha contends the district court's judgment was proper because the lease break fee was a valid liquidated damages clause enforceable under Kansas law.

"[T]he interpretation and legal effect of written instruments" and "the propriety of liquidated damages" are matters of law over which appellate courts exercise unlimited review. *Carrothers Const. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). Interpretation of the KRLTA, K.S.A. 58-2540 et seq., is also a question of law that appellate courts review de novo. *Johnson v. Bass Pro Outdoor World, LLC*, 320 Kan. 325, 333, 567 P.3d 810 (2025). "The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction." *Carrothers Const. Co.*, 288 Kan. at 751. Finally, the party seeking to invalidate a liquidated damages provision bears the burden of proving that the clause is really an unenforceable penalty. 288 Kan. at 755.

7

On appeal, Kenyatta and Florence argue that liquidated damages provisions are not allowed in any leases under the KRLTA. But their argument relies on cases that are not applicable to the lease terms at issue in this case. The precedent cited by Kenyatta and Florence concerns early termination provisions that treated the *security deposit* as a type of liquidated damages which, as Kenyatta and Florence note, is barred by K.S.A. 58-2550(b) which only allows deductions for actual damages incurred. See *Geiger v. Wallace*, 233 Kan. 656, 660, 664 P.2d 846 (1983) (deductions from security deposit must be itemized in written notice delivered to the tenant); *Vogel v. Haynes*, 11 Kan. App. 2d 454, 456, 730 P.2d 1096 ("A lump sum penalty, common to liquidated damages, is proscribed by K.S.A. 58-2550[b] which provides only for actual damages sustained."); *Wurtz v. Cedar Ridge Apts.*, 28 Kan. App. 2d 609, 612, 18 P.3d 299 (2001) (forfeiture of the entire security deposit due to early termination of the lease is prohibited by K.S.A. 58-2550[b]).

Sopha counters that other than liquidated damages arising from security deposits—which she acknowledges is a practice prohibited by the KRLTA—other provisions that may be characterized as liquidated damages are not explicitly prohibited and thus may be enforced without running afoul of the Act. Sopha highlights K.S.A. 58-2564(c), which provides: "Except as otherwise provided in the residential landlord and tenant act, the landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or K.S.A. 58-2555 and amendments thereto." We note that K.S.A. 58-2547(c) includes a list of terms and conditions that are prohibited under the KRLTA. Notably absent from this list is any blanket prohibition on predetermined damages in the event of an early lease termination.

As summarized earlier, the district court held that the lease provisions stated that Sopha could recover both a lease break fee of one month's rent ($2,335) and a move-out charge ($3,000). The district court deemed both provisions to be valid liquidated damages clauses, although it concluded the two provisions were in conflict. Construing the

8

conflicting provisions against Sopha, as the drafter of the lease, the district court held that Kenyatta and Florence must pay the lesser lease break fee of $2,335 which it deemed "reasonable—was agreed to, and is not unconscionable and is the liquidated damages clause agreed to under the terms of the Lease."

Preliminarily, we decline Kenyatta and Florence's invitation to resolve this case by holding as a matter of law that liquidated damages are never allowed under the KRLTA. That is because assuming—without deciding—some forms of liquidated damages are generally enforceable under the KRLTA as posited by Sopha, we must still determine whether the lease break fee in this particular lease was a valid liquidated damages clause under general contract principles.

As discussed below, we are persuaded that applying general contract principles, pertaining to liquidated damages, to the terms of this unique residential lease, the lease break fee of $2,335 was an impermissible penalty rather than an enforceable liquidated damages clause. Given this holding, we do not need to reach the ultimate statutory question posed by Kenyatta and Florence of whether liquidated damages are ever permissible under the KRLTA.

As an initial matter, a liquidated damages clause "is an advance settlement of the anticipated actual damages arising from a future breach" of a contract. *Carrothers Const. Co.*, 288 Kan. at 754. Liquidated damages provisions allow parties to the contract to avoid "the difficulty, uncertainty, and expenses" that litigation necessarily entails when trying to determine the actual damages incurred by a breach. 288 Kan. at 754. This promotes "a public policy favoring settlement and avoidance of litigation, and allowing parties to make, and live by, their own contracts." 288 Kan. at 755. Because avoiding litigation benefits the parties and the court, it is well established that parties may generally stipulate at the time of contracting to a predetermined amount of damages for a breach of that contract—"as long as the liquidated damages provision is not a penalty."

9

288 Kan. at 754. Importantly, "a penalty secures performance, while a liquidated damages clause requires payment of a sum certain in lieu of performance." 288 Kan. 743, Syl. ¶ 5.

Two considerations have particular weight when a court determines whether a contractual provision is an enforceable liquidated damages clause or an unenforceable penalty: Whether (1) "the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach"; and (2) "the amount of actual damages resulting from default would not be easily and readily determinable." 288 Kan. at 755 (quoting *Beck v. Megli*, 153 Kan. 721, 726, 114 P.2d 305 [1941]).

Regarding the first consideration, a default of the 12-month lease could potentially result in damages from lost rent of $28,020 (for a breach in the first month of the lease). The stipulated lease break fee of $2,335 is not a reasonable liquidated damages clause because at the time of the lease signing the value of the one-year lease is significantly greater than the amount of the purported liquidated damages. See *Carrothers Const. Co.*, 288 Kan. 743, Syl. ¶ 8 ("A prospective analysis is the sole basis for evaluating whether a liquidated damages provision in a contract is reasonable.").

As to the second consideration, at the time of the lease signing the amount of the actual damages was readily capable of being determined. The principal damages would be the loss of monthly rent for which the value of $2,335 per month was set forth in the lease. Other damages would relate to the cost of listing the property for rent after the default. In this regard, Sopha testified that, based on her experience of leasing the property for 10 years, it had taken on average between 4 to 6 weeks to find new tenants and finalize a new lease. So, at the time Sopha rented the property to Kenyatta and Florence, based on her decade-long experience as the landlord of this particular property, the amount of actual damages resulting from default was easily and readily determinable.

In summary, applying the two considerations highlighted in *Carrothers Const. Co.* to the case on appeal, the lease break fee has the characteristics of an unenforceable penalty rather than an enforceable liquidated damages clause.

Having examined the lease break fee as a stand-alone contractual provision, it is appropriate to consider that clause in conjunction with other provisions found within the four corners of the lease. The fact that the lease additionally contained an early move-out charge of $3,000 shows that the lease break fee of $2,335 was not considered an advance settlement of the anticipated actual damages arising from a future breach of the lease. Rather, the two early termination provisions, considered together, have all the earmarks of a substantial penalty designed to secure Kenyatta and Florence's compliance in fulfilling the terms of the lease rather than a liquidated damages clause in lieu of performing the lease. See 288 Kan. 743, Syl. ¶ 5.

Moreover, one additional term in the lease supports this conclusion. The early termination addendum that sets forth the early move-out charge also states: "Tenant(s) is/are still responsible for all obligations under the Lease, *including paying for all rent due, damages, and other charges.*" (Emphasis added.) Of note, the district court did not address the rental payments clause or what effect, if any, it had in discerning whether the lease break fee or move-out charge was an enforceable liquidated damages clause. Kenyatta and Florence argue, however, that this clause obligated them to pay rent and other damages related to re-renting the property even if they were to pay the sums listed in the two early termination clauses. Sopha does not address this argument.

In our view, this provision requiring payment of all rent due at the time of default has the indicia of an acceleration clause. To the extent this phrase is ambiguous, we may look to evidence beyond the four corners of the lease to determine the parties' intent. See 288 Kan. at 751. In this case, the record established that about the time of the breach, during email exchanges between Sopha and Kenyatta and Florence regarding the parties'

11

views of the meaning of the lease terms, Sopha claimed that upon the early termination of the lease she was legally allowed to "accelerate all rent payments for the remainder of the lease." This evidence supports Kenyatta and Florence's position that the lease contained a clause to accelerate the rental payments as damages in case of default.

All things considered, we are convinced that the lease break fee, early move-out charge, and the addendum accelerating monthly rental payments, considered together, make clear that the lease break fee of one month's rent was never intended to constitute liquidated damages as a stipulated final settlement for any tenants who terminate the lease early. Rather than constituting an advance settlement of anticipated actual damages from a future early lease termination, the lease break fee was merely one part of three separate lease provisions that individually, collectively, and substantially penalized any tenants for breaking the lease early. Accordingly, we conclude as a matter of law that the early lease break fee was not a valid or enforceable liquidated damages provision. We reverse the judgment in favor of Sopha on her counterclaim for liquidated damages and remand to the district court to enter an amended judgment consistent with this opinion.

Reversed and remanded with directions.